UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANGELA DEWEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | CIVIL NO. 3:12cv81 |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI). 42 U.S.C. §423; 42 U.S.C. §1383c. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since January 28, 2008 the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: Marfan's Syndrome, arthritis of the lumbar spine, borderline intellectual functioning, depression, panic disorder, borderline personality disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can only occasionally stoop, balance, crouch, crawl, kneel and climb. The claimant requires simple, repetitive tasks requiring minimal independent judgment or analysis in a mild to moderately stressful work environment, static work goals, and only occasional contact with the public and coworkers.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on June 11, 1970 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 28, 2008, the date the application was filed (20 CFR 416.920(g)).

(Tr. 22-30).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff, filed her opening brief on August 26, 2012. On December 2, 2012, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined

to file a reply.  Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff applied for SSI effective January 28, 2008, alleging that she became disabled on August 8, 1978 (Tr. 20, 114-18), due to a multitude of physical and mental impairments (Tr. 165). Her application was denied initially and upon reconsideration (Tr. 65-66). On June 7, 2010, Plaintiff appeared with her lawyer and testified at an administrative hearing before an administrative law judge (ALJ). A vocational expert also testified at the hearing (Tr. 36-64).

Plaintiff was 40 years old when the ALJ rendered his decision (Tr. 30, 114). She had a high school education, having taken special education classes (Tr. 171); she had no past relevant

work experience (Tr. 29). Plaintiff had Marfan's Syndrome, arthritis of the lumbar spine, borderline intellectual functioning, depression, panic disorder, and borderline personality disorder. (Tr. 25-29).

The ALJ asked the vocational expert to consider a hypothetical individual who could perform light work with only occasional balancing, stooping, crouching, crawling, kneeling, and climbing; the work had to involve only simple, repetitive tasks requiring little independent judgment or analysis to perform in a mild to moderately stressful work environment, with static work goals (i.e., with very little change from day to day) (Tr. 59). The individual could have no more than occasional contact with the public and coworkers (Tr. 59). The vocational expert testified that such an individual could perform work as a packer (with approximately 14,000 positions existing in the state of Indiana), assembler (5,500 positions), and machine tender (18,800 positions) (Tr. 59-60). The vocational expert identified approximately 5,000 additional positions that the hypothetical individual could perform if she were limited to sedentary work, with the same non-exertional limitations (Tr. 60-61).

The Plaintiff seeks a remand, arguing that her condition equals Medical Listing 12.05C, and that the ALJ failed to discuss this listing in his decision. Medical Listing 12.05C is as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> \* \* \*
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .
> Listing in Appendix 1, Subpart P, Regulations No. 4

The Plaintiff acknowledges that she has a Verbal IQ of 75, Performance IQ of 76, and a Full Scale IQ of 74. Thus she does not argue that her condition <u>meets</u> listing 12.05C. Rather, she argues that her condition <u>equals</u> listing 12.05C.

To equal a listing, medical equivalence is defined as follows:

(a) What is medical equivalence? Your impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment.

(b) How do we determine medical equivalence? We can find medical equivalence in three ways.

(1)(I) If you have an impairment that is described in appendix 1, but–

(A) You do not exhibit one or more of the findings specified in the particular listing, or

(B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

(ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
20 CFR § 404.1526

Plaintiff relies on POMS Section DI 24515.056(D)(1)(c) which states "Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination."

Plaintiff argues that because the ALJ found that she has Marfan's Syndrome, arthritis of the lumbar spine, depression, panic disorder and borderline personality disorder, that these

disorders "impose additional and significant work-related limitation of function" and thus she has met the criteria of an equivalence determination. Thus she concludes that the ALJ's failure to discuss listing 12.05C is an error of law requiring a remand.

The ALJ found that Plaintiff had severe impairments but that her impairments did not prevent her from performing a highly limited range of light work (Tr. 24). Regarding Plaintiff's physical limitations, the ALJ's RFC finding is consistent with the opinion of R. Bond, M.D., a state agency medical expert who reviewed Plaintiff's entire claim file in May 2008 and completed a Physical RFC Assessment form outlining Plaintiff's limitations (Tr. 358-65). It does not appear that any other medical source offered an opinion on Plaintiff's physical limitations, and Dr. Bond's opinion therefore is uncontradicted. In any case, Plaintiff does not challenge the ALJ's decision with respect to her physical limitations, so any argument on this point should be deemed waived. *See Narducci v. Moore*, 572 F.3d 313, 324 ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited).

Regarding Plaintiff's mental limitations, the ALJ weighed different medical source opinions and he noted that one consultative examiner, Douglas J. Babcock, Psy.D., offered a "provisional" diagnosis of mild mental retardation (Tr. 28-29; *see* Tr. 318). However, the ALJ concluded that Plaintiff's activities were "more consistent with borderline intellectual functioning . . ." (Tr. 28-29). The ALJ's finding on this point is supported by the detailed opinion of Maura Clark, Ph.D., a state agency medical expert who reviewed Plaintiff's file, including Dr. Babcock's report, and stated that her activities—which included Plaintiff's tending to her personal care, cooking simple meals, driving, light cleaning, paying bills, doing laundry, playing bingo, and using a computer—were "more consistent with BIF dx [borderline

7

intellectual functioning diagnosis] than MMR [mild mental retardation]" (Tr. 335-36). Dr. Clark also found that Plaintiff's school records and intelligence testing when Plaintiff was 21 years old supported a finding of borderline intellectual functioning. As the ALJ noted (Tr. 29), Dr. Clark's opinion was affirmed in June 2008 by B. Randal Horton, Psy.D., another state agency medical expert (Tr. 390)

Plaintiff does not challenge the ALJ's reliance upon Dr. Clark's opinion in evaluating her mental RFC, and so any argument on this point is deemed waived. *Narducci* , 572 F.3d at 324. Indeed, Plaintiff does not even mention the opinions of Dr. Clark and Dr. Horton or suggest that the ALJ erred in any way in assessing her mental (or physical) RFC. Instead, the sole argument Plaintiff raises to this Court is that the ALJ allegedly erred in not considering whether her impairment equaled Listing 12.05C, 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C . However, the ALJ's analysis clearly addressed whether Plaintiff's mental condition satisfied the requirements of Listing 12.05C, which requires that the claimant demonstrate, inter alia, significant deficits in adaptive functioning. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C. The Seventh Circuit has held that an ALJ is entitled to rely on activities such as those discussed by the ALJ in this case and explored in detail by Dr. Clark (*see* Tr. 29, 335) in concluding that a claimant did not have deficits in adaptive functioning that were so extreme as to warrant a finding of disabled under the listing. *See Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) (upholding ALJ decision regarding Listing 12.05C deficits in adaptive functioning where claimant cared for three children without help, "feeding herself and them, taking care of them sufficiently well that they have not been adjudged neglected and removed from her custody by the child-welfare authorities, paying her bills, avoiding eviction").

Plaintiff has not even addressed the rationale of the ALJ, Dr. Clark, and Dr. Horton in concluding that Plaintiff's deficits in adaptive functioning did not satisfy Listing 12.05C. She does not mention the fact that the initial and reconsideration determinations by the state agency that she was not disabled were approved by Dr. Clark and Dr. Horton (Tr. 65-66). At the time they issued their determinations, these physicians had reviewed the record and concluded that Plaintiff's condition did not meet or equal *any* listed impairment. *See* Social Security Ruling (SSR) 96-6p, 61 Fed.Reg. 34466, 34467 (July 2, 1996) (state agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act). The Seventh Circuit has held that such forms "conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review,'" that an "ALJ may properly rely upon the opinion of these medical experts," and that, in light of the experts' opinions, substantial evidence supports a finding that a claimant did not meet or equal a listing. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (*quoting Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989), and *citing Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1994)); *see also Pope v. Shalala*, 998 F.2d 473, 481 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *Fox v. Heckler*, 776 F.2d 738, 740-41 (7th Cir. 1985). The agency doctors' opinions thus constitute expert medical evidence that Plaintiff's impairments did not meet or equal any listed impairment. Accordingly, as there is no basis for a remand, the ALJ's decision will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: January 3, 2013.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court